# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MELINDA A. MEZA,<br><br>      Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, *in her capacity as Acting Commissioner of the Social Security Administration*,<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No.  2:14-cv-00452-EJF<br><br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Melinda A. Meza filed this action asking this Court[1] to reverse or remand the final agency decision denying her Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see* 42 U.S.C. §§ 1381–1383f (2010).  The Administrative Law Judge ("ALJ") determined that Ms. Meza did not qualify as disabled within the meaning of the Social Security Act.  (Admin. R. 9, certified copy tr. of R. of admin. proceedings:  Melinda A. Meza (hereinafter "Tr. __"), ECF No. 8.)  Based on the Court's careful consideration of the record, the parties' memoranda, and relevant legal authorities, the Court AFFIRMS the Commissioner's decision.[2]

---

[1] The parties jointly consented to this Court's determination of the case under 28 U.S.C. § 636(c).  (ECF No. 13.)

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

**Procedural History**

In June 2008 and again in February 2010,[3] Ms. Meza filed for SSI, alleging disability beginning February 1, 2008.  (Tr. 444, 460.)  Ms. Meza later amended her alleged onset date to June 16, 2008.  (Tr. 47.)  The ALJ conducted a hearing on December 7, 2009.  (Tr. 45.)  On February 3, 2010, the ALJ issued a ruling finding Ms. Meza not disabled.  (Tr. 211–212.)  On November 29, 2011 the Appeals Council remanded the ALJ's decision.  (Tr. 217–220.)  The ALJ conducted three additional hearings on June 7, 2012, November 8, 2012, and January 8, 2013.  (Tr. 81, 124, 142.)  On January 23, 2013 the ALJ again issued a decision finding Ms. Meza not disabled.  (Tr. 33.)  The Appeals Council denied Ms. Meza's request for review on April 18, 2014, (tr. 1), making the ALJ's second Decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 1383(c)(3).  *See* 20 C.F.R. § 416.1481.

**Factual Background**

Ms. Meza, born April 2, 1967, has past relevant work experience as a production assembler.  (Tr. 32, 444.)

A June 2007 MRI scan showed Ms. Meza's lumbar spine as "essentially normal."  (Tr. 702.)  In November 2007, Ms. Meza visited David R. Hillam, MD, her primary care physician, complaining of low back pain which the doctor characterized as lumbago.  (Tr. 818–20, 840.)  During that visit, Dr. Hillam noted Ms. Meza had a normal gait, full muscle strength, and normal toe and heel walks.  (*Id*.) The report indicates prior medical diagnosis of obesity.  (Tr. 819.)  In January 2008, Dr. Hillam again reported normal gait, strength, and walking tests.  (Tr. 811-12.)  Eight additional examinations stretching from February 2008 to November 2009 produced similar results.  (Tr. 786–88, 796–97, 800–02, 807–09, 842–43, 847–49, 851–53, 855–57.)

---

[3] The Appeals Council essentially consolidated Ms. Meza's two applications.  (*See* tr. 89.)

In February 2008, Ms. Meza fell on ice and hurt her mid to lower back.  (Tr. 808.)  The doctor noted Ms. Meza's x-rays showed "spurring and arthritic changes" in the lumbar and thoracic spine.  (Tr. 809.)  The doctor increased Ms. Meza's pain medication and prescribed a prednisone-pack.  (*Id.*)  In a March 2008 Work Ability Report Dr. Hillam described Ms. Meza as unable to work and unable to sit or stand for greater than twenty minutes.  (Tr. 746.)  Dr.  Hillam further opined that Ms. Meza could return to work in three months.  (*Id.*)  In July 2008, Lewis J. Barton, MD, a state agency physician, assessed that Ms. Meza can lift twenty pounds occasionally and ten pounds frequently.  (Tr. 747–49.)  Dr. Barton, who did not personally examine Ms. Meza, also found Ms. Meza capable of walking, sitting, and standing for six hours in an eight-hour workday.  (*Id.*)

During 2009, three times weekly, Ms. Meza participated in "pool exercises."  (Tr. 852, 860.)  On June 9, 2009 Ms. Meza demonstrated a complete range of motion and strength in her hands along with negative straight leg raises.  (Tr. 857.)  By December 2009, Dr. Hillman asserted Ms. Meza could not lift any weight ever and could sit or stand for less than two hours daily.  (Tr. 1035-36.)

In March 2010, Ms. Meza had a rheumatoid arthritis workup at the direction of Dr. Hillman due to increasing all over pain.  (Tr. 873, 960.)  The rheumatologist found no evidence of rheumatoid arthritis, but found support for a fibromyalgia diagnosis, and recommended further treatment in light of that evidence.  (*Id.*)  In May 2010, Dr. Hillam diagnosed Ms. Meza with fibromyalgia finding twelve trigger points.  (Tr. 886–89.)  Dr. Hillman changed Ms. Meza's medications to address the fibromyalgia.  (*Id.*)  On July 14, 2010 Ms. Meza reported to Dr.

3

Hillam that she had less pain, was "exercising more [and] [d]oing a toned down version of Zumba and water aerobics." (Tr. 890–91.)

In both April and August 2011, Dr. Hillam completed forms for Utah's Department of Workforce Services describing Ms. Meza as completely unable to work for the remainder of her life. (Tr. 1183–84.) After a September 9, 2011 examination, Dr. Hillam asserted Ms. Meza "is doing very well," swimming several times a week, and her efforts to improve her health "have been effective." (Tr. 1193–95.)

By November 2011, Ms. Meza continued to improve by "exercising in the pool daily." (Tr. 1188–90.) At the same visit, she exhibited normal wrist strength and indicated she helped care for her dying mother in California. (*Id.*) In December 2011, Dr. Hillam penned a letter noting X-rays of Ms. Meza's spine showed "subluxation of her L4 vertebrae on the L5 vertebrae, osteophyte formation, and narrowed disk spaces." (Tr. 1187.) The letter further asserted Ms. Meza's "prognosis for further improvement in her back pain [and] fibromyalgia … is poor." (*Id.*)

In January 2012, Dr. Hillam again described Ms. Meza as incapable of working. (Tr. 1185.) In a February 9, 2012 medical record, Dr. Hillam noted Ms. Meza had fibromyalgia and hand numbness and pain but noted she continued "swimming in the pool and attending a spinning class." (Tr. 1246–47.)

In October 2012, Ms. Meza began seeing Matthew Walton, MD, a family medicine physician. (Tr. 1315.) On January 3, 2013, Dr. Walton reported Mr. Meza suffered from tender trigger points and described her stress level as "incapacitating." (Tr. 1315–20.) Ms. Meza, Dr. Walton contends, cannot sit or stand for more than ten minutes and only rarely can lift fewer than

ten pounds.  (Tr. 1318–19.)  Dr. Walton further assessed Ms. Meza as likely to miss four or more

work days monthly as a result of her medical issues.  (Tr. 1320.)

Ms. Meza, who stands approximately five feet five inches tall, at one time weighed 326

pounds but weighed 187 pounds by June 2012.  (Tr. 15.)  At the January 8, 2013 hearing, Ms.

Meza testified she has

> pain that goes throughout my whole body.  It feels like burning, sharp.  And I feel
> like there's a whole bunch of creepy crawlies throughout my body, from my toes
> all the way to the tips of my hair.  And it's more intense in certain parts, mainly
> like my lower back but it penetrates outwards.

(Tr. 162.)  She further testified she can sit or stand for about ten minutes at a time and that she

struggles to lift a gallon of milk.  (Tr. 164-65.)  She also asserts she needs to lie down six to

seven times during the day for ten or more minutes.  (Tr. 165.)

## STANDARD OF REVIEW

42 U.S.C. § 1383(c)(3) provide for judicial review of a final decision of the

Commissioner of the Social Security Administration ("SSA").  The Court reviews the

Commissioner's decision to determine whether the record as a whole contains substantial

evidence in support of the Commissioner's factual findings and whether the SSA applied the

correct legal standards.  42 U.S.C. § 1383(c)(3); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007).  The Commissioner's findings shall stand if supported by substantial evidence.  42 U.S.C.

§ 1383(c)(3).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion

constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly

contradicted by other evidence."  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).  The

standard "requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084.

"Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of

evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotation marks and citations omitted).  Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted).  The court will "review only the *sufficiency* of the evidence." *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).  The court does not have to accept the Commissioner's findings mechanically, but "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (*quoting Zoltanksi v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on

the correct legal standards.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-step sequential evaluation.  *See* 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 416.920.  The claimant has the initial burden of establishing the disability in the first four steps.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden

shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy. *Id.*

The ALJ evaluated Ms. Meza's claim through step four,[4] making the following findings of fact and conclusions of law with respect to Ms. Meza:

1. "[Ms. Meza] has not engaged in substantial gainful activity since June 16, 2008, the application date (20 CFR 416.971 *et seq*.)." (Tr. 15.)

2. "[Ms. Meza] has the following severe impairments: fibromyalgia; mild back disorder; mild degenerative joint disease of the knees; mild carpal tunnel syndrome; obesity; mild depression and mild anxiety (20 CFR 416.920(c))." (*Id.*)

3. "[Ms. Meza] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (*Id.*)

4. "After careful consideration of the entire record, the undersigned finds that [Ms. Meza] has the residual functional capacity to perform light unskilled work as defined in 20 CFR 416.967(b) with the following limitations:

- [Ms. Meza] is limited to occasionally lift and/or carry (including upward pulling) a maximum of 20 pounds occasionally and 10 pounds frequently;
- [Ms. Meza] is limited to standing or walking (with normal breaks) for a total of about six hours in an eight-hour workday;
- [Ms. Meza] is limited to sitting (with normal breaks) for a total of about six hours in an eight-hour workday;
- [Ms. Meza] is limited to occasionally climb stairs, squat, bend/stoop, kneel, reach above shoulders, use foot controls; and drive;
- [Ms. Meza] is limited to frequently push/pull, turn arms and wrists, open and close fists, and use of hands and fingers.
- [Ms. Meza] is moderately limited in the ability to understand, carry out, and remember instructions and, therefore is limited to simple, routine work;
- [Ms. Meza] is mildly to moderately limited in the ability to respond appropriately to the public and, therefore, is limited to only occasional job-related contact with the public." (Tr. 17–18.)

5. "[Ms. Meza] is capable of performing past relevant work as a production assembler, D.O.T. # 706.687-010, which is light unskilled work with a SVP of 2. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965)." (Tr. 32.)

6. "[Ms. Meza] has not been under a disability, as defined in the Social Security Act, since June 16, 2008, the date the application was filed (20 CFR 416.920(f))." (Tr. 33.)

---

[4] The ALJ also provided analysis through step five as an alternative to his four-step reasoning. (Tr. 32.)  Because the Court upholds the ALJ's four-step analysis, this Decision does not reach the ALJ's fifth step.

In short, the ALJ concluded Ms. Meza has the RFC to perform her past relevant work as a production assembler, and so she does not qualify as disabled.

In support of her claim that this Court should reverse the Commissioner's decision, Ms. Meza argues the ALJ erred:  (1) at step three in the evaluation of Ms. Meza's fibromyalgia; (2) by failing to evaluate Ms. Meza's fibromyalgia properly when determining her RFC; (3) by finding Ms. Meza has performed past relevant work despite an earlier decision stating otherwise; and (4) by failing to meet the Commissioner's burden at step five.[5]  (Pl.'s Opening Br. 3–7, ECF No. 17.)  As part of her fourth argument, Ms. Meza challenges the ALJ's evaluation of physician weight and claimant credibility.  (*Id.* at 7–19.)  Lastly, Ms. Meza argues the ALJ failed to obtain an explanation for the conflict between the Vocational Expert's ("VE's") testimony and the DOT.  (*Id.* at 19.)

## I.  The ALJ's Step Three Analysis of Ms. Meza's Fibromyalgia

Ms. Meza argues the ALJ improperly evaluated her fibromyalgia and improperly relied on Dr. Morrison's expert opinion in doing so.  (*See* Pl.'s Opening Br. 3–4, ECF No. 17.)  At step three, the ALJ must evaluate whether the impairment equals one of the impairments listed in the appendix of the relevant disability regulation, which if does, directs a finding of disabled.  *See* 20 C.F.R. § 416.920.  The ALJ found none of Ms. Meza's impairments or the combination of impairments equals the severity of one of the listed impairments.  (Tr. 15.)

20 C.F.R. Part 404, Subpart P, Appendix 1 lists impairments that preclude substantial gainful employment.  *See* 20 C.F.R. § 416.925(a) (describing the purpose of the Listings).  The

---

[5] By making only these arguments in her opening brief, Ms. Meza waives any additional challenges to the ALJ's decision.  *See Anderson v. Dep't of Labor*, 422 F.3d 1155, 1182 n.51 (10th Cir. 2005) (waiving argument claimant did not first raise in her opening brief).

claimant bears the burden of showing her impairment meets or equals the requirements of a listed impairment. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). For an ALJ to find a claimant meets a listing, the claimant's impairment must "satisf[y] all of the criteria of that listing, including any relevant criteria in the introduction, and meet[] the duration requirement." 20 C.F.R. § 416.925(c)(3). If a claimant's impairment does not meet a listing, her impairment may constitute the medical equivalent if she has "other findings related to [her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1)(ii).

Where the claimant does not meet or equal a listing the ALJ must "discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citations omitted). But inadequate analysis at step three may constitute harmless error if the "ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross*, 431 F.3d at 733. In general, a court may find an error harmless when "based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733–34 (internal quotation marks and citation omitted).

As Ms. Meza's Opening Brief notes, the ALJ found Ms. Meza's fibromyalgia qualified as a severe medically determinable impairment. (Opening Br. 3, ECF No. 17; tr. 15.) The ALJ found, however, that fibromyalgia does not meet or equal the requirements of a listed impairment. (Tr. 15–16.) The ALJ supported this finding by referring to Dr. Morrison's testimony. (Tr. 16 (*see* tr. 155–56).) Dr. Morrison testified Ms. Meza's fibromyalgia does not equal a listing; he also suggested fibromyalgia would never meet a listing because it goes to

"sustainability."  (*See* tr. 156.)  As the ALJ notes, Dr. Morrison testified Ms. Meza's

"impairments, neither singly or in combination, met or equaled any of the [listings]."  (Tr. 16

(*see* tr. 149–157).)

Ms. Meza argues the ALJ improperly relied upon Dr. Morrison's testimony because the

doctor "admitted he was not that familiar with [fibromyalgia]."  (Opening Br. 4, ECF No. 17.)

Ms. Meza waived the qualification argument by failing to object to Dr. Morrison's testimony as

a medical expert during the hearing.  (*See* tr. 148; *Birkinshaw v. Astrue*, 490 F. Supp. 2d 1136,

1141-42 (D. Kan. 2007) (finding waiver of objections to medical expert's competency where

claimant failed to object to testimony at hearing).)

Ms. Meza also contends the ALJ "failed to evaluate [Ms. Meza's fibromyalgia] in the

light of Social Security Ruling 12-2p."  (Opening Br. 3. ECF No. 17.)  SSR 12-2p, which issued

approximately six months prior to the hearing, specifically states that the SSA will analyze

whether fibromyalgia equals a listing, noting the potential equivalent of listing 14.09D for

inflammatory arthritis.  SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012).  Neither the ME

nor the ALJ give any analysis for fibromyalgia's equivalency in this case.  Failure to do so was

error.

Listing 14.09D requires two "constitutional symptoms" – severe fatigue, fever, malaise,

or involuntary weight loss – and a marked level of limitation in activities of daily living,

maintaining social functioning, or concentration, persistence, or pace.  *See* 20 C.F.R. pt. 404,

subpt. P, app. 1.  In considering whether the ALJ's failure to assess equivalency to listing 14.09D

constitutes harmless error, the Court looks to the remainder of the ALJ's Decision to decide

whether a proper basis exists to uphold the listing determination.  *Fischer-Ross*, 431 F.3d at 733.

Ms. Meza's record shows fatigue and malaise that may or may not rise to the relevant level. Assuming the fatigue and malaise do rise to the required level, the Court considers the next part of the listing.

As to activities of daily living, the ALJ analyzes the combined impact of all of Ms. Meza's impairments on her activities of daily living when he considers her RFC. (Tr. 22–23.) The ALJ definitively finds the activities of daily living inconsistent with debilitating pain or an inability to function. (*Id.* at 23.) Given that finding the Court can conclude the ALJ would not have found a marked limitation in activities of daily living.

Similarly in making the RFC finding, the ALJ found Ms. Meza could perform simple work based on moderate limitations in her ability to understand, carry out, and remember instructions. (Tr. 18.) This finding undermines any likelihood that the ALJ would have found Ms. Meza's fibromyalgia caused marked limitations in concentration, persistence, or pace.

Moreover, the ALJ limited Ms. Meza to occasional contact with the public in her RFC. (Tr. 18.) While this finding acknowledges difficulty in maintaining social functioning, it shows the ALJ did not find Ms. Meza's social deficits rise to a marked level of severity. Therefore, the ALJ would not have found Ms. Meza's impairments equaled listing 14.09D, even if he had conducted the proper analysis. Therefore, the Court finds the Decision on this point constitutes harmless error.

## II. Evaluation of Ms. Meza's RFC

Ms. Meza also challenges the ALJ's evaluation of Ms. Meza's RFC. (Pl.'s Opening Br. 5–6, ECF No. 17.) A claimant's RFC reflects the ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments. *See* 20 C.F.R. § 416.945. In determining the claimant's RFC, the decision maker considers all of the claimant's

medically determinable impairments, including those considered not "severe." *See* 20 C.F.R. § 416.945(a)(2).

Ms. Meza argues the ALJ failed to "'consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have bad days and good days.'" (Pl.'s Opening Br. 5 (*quoting* SSR 12-2p), ECF No. 17.) The Court disagrees. In finding Ms. Meza capable of performing light unskilled work subject to certain listed limitations, the ALJ extensively reviewed Ms. Meza's testimony and medical records. (Tr. 17–32.) The ALJ specifically describes much of Ms. Meza's medical history and goes on to explain why he accepted or rejected various assertions about Ms. Meza's health. (*Id.*) Therefore, the Court finds the ALJ did not err in his analysis of fibromyalgia in determining Ms. Meza's RFC.

### III. Ms. Meza's Credibility

Ms. Meza also argues the ALJ did not apply the correct legal standard when evaluating her credibility and lacked substantial evidence for his determination. (Pl.'s Opening Br. 15–17, ECF No. 17.) The Court disagrees.

"'Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's assertions of severe pain and decide the extent to which the ALJ believes the claimant's assertions. *Id.* To make this analysis, the ALJ should consider such factors as

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* (citation and internal quotation marks omitted).  But this analysis "does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ found one could reasonably expect Ms. Meza's medically determinable impairments to cause some of her alleged symptoms.  (Tr. 23.)  However, the ALJ found Ms. Meza's statements about the intensity, persistence, and limiting effects of her symptoms lacked credibility.  (*Id.*)  The ALJ satisfied his obligation under *Kepler* by explaining in detail why Ms. Meza's medical reports and daily activities contradict her claims of sustained crippling pain.  (Tr. 22–23.)  Specifically, the ALJ noted Ms. Meza's record of consistently attending appointments and attending recreation classes belies her "allegations of difficulty leaving the home and being around people."  (Tr. 22.)  Furthermore, the ALJ acknowledged that Ms. Meza did have trouble walking in 2010 but since that time had taken both Zumba and spinning classes, belying her claims that she has difficulty standing and sitting for more than ten minutes at a time.  (*Id.*)  The ALJ also notes that Dr. Hillam continually noted Ms. Meza's normal gait, further undercutting her testimony regarding difficulty walking.  (*Id.*)

In making the RFC determination, the ALJ considered Ms. Meza's own statements and her medical records.  Although Ms. Meza provides citations to records supporting her claims of disability, Ms. Meza never establishes more than "the possibility of drawing two inconsistent conclusions from the evidence."  *Lax*, 489 F.3d at 1084 (citation and quotation marks omitted).

14

The ALJ applied the proper legal standard, and substantial evidence supports his decision with respect to Ms. Meza's credibility.

**IV. Medical Source Credibility**

An ALJ must evaluate every medical opinion.  20 C.F.R. § 416.927(c).  If the ALJ finds a treating physician's opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record," the ALJ must give the opinion controlling weight.  20 C.F.R. § 416.927(c)(2).  When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider certain factors.  20 C.F.R. § 416.927(c) provides these factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

See *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003) (citation omitted).  To reject a medical opinion, the ALJ must provide "'specific, legitimate reasons.'"  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)).

The ALJ's decision need not discuss explicitly all of the factors for each of the medical opinions.  See *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that a lack of discussion of each factor does not prevent the court from according the decision meaningful review).  When considering medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and inconsistencies.  See *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (reflecting the ALJ's duty to resolve conflicting medical evidence).

### A.  Dr. Hillam

Ms. Meza focuses on the ALJ's evaluation of Dr. Hillam and contends the ALJ failed to conduct the initial step in reviewing treating physician testimony.  (Pl.'s Opening Br. 7–14, ECF No. 17.)  Ms. Meza contends the ALJ should have given Dr. Hillam controlling weight.  (*Id.* at 7.)

Here, the ALJ did not accord controlling weight to Dr. Hillam's opinion.  (Tr. 27.) Instead, the ALJ gave "little weight" to Dr. Hillam's assertions that Ms. Meza cannot work.  (*Id.*)  In *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014), the Tenth Circuit upheld an ALJ's decision despite the absence of an express controlling weight analysis of a treating physician's opinion: "[T]he ALJ implicitly declined to give the opinion controlling weight.  Because we can tell from the decision that the ALJ declined to give controlling weight to [the treating physician's] opinion, we will not reverse on this ground."  Thus this Court finds no error in omitting discussion of controlling weight.

Ms. Meza further contends that Dr. Hillam deserved more than little weight. (Pl.'s Opening Br. 10, ECF No. 17.)  Before reaching his conclusion, the ALJ reviewed Dr. Hillam's opinions at length.  (Tr. 27-28.)  The ALJ discussed, for instance, Dr. Hillam's assertion that Ms. Meza's "pain level will constantly interfere with her ability to perform even simple tasks. … [And] [s]he can sit no longer than 10 minutes at any one time and stand no longer than 10 minutes at any one time."  (Tr. 27 (*citing* tr. 735, 743).) The ALJ also reviewed Dr. Hillam's Prehearing Procedure Form and his Fibromyalgia Residual Functional Capacity Questionnaire and Participation Ability Report.  (Tr. 27 (*citing* 1029–30,1032, 1034-1036).)  These reports indicated, among other findings, that Ms. Meza "could not sustain two hours of work during an eight-hour workday."  (Tr. 27.)

The ALJ provided specific reasons for providing little weight to Dr. Hillam's opinions. The ALJ notes "Dr. Hillam bases his opinions, at least in part, on [Ms. Meza's] self-reported symptoms." (Tr. 27.) The ALJ contrasts these reported symptoms with Dr. Hillam's objective medical testing, which indicated Ms. Meza has some decreased range of motion, negative straight leg raises, a normal gait, and normal strength. (Tr. 28 (*citing*, *inter alia*, tr. 861, 865, 869, 905, 909, 912, 916, 1195, 1210, 1248); *see also Watkins*, 50 F.3d at 1300–01.) Because the ALJ had substantial evidence to discount Ms. Meza's credibility, he also had substantial evidence to discount Dr. Hillam's opinions to the extent they relied on Ms. Meza's self-reports.

The ALJ further discounted Dr. Hillam's opinion because Dr. Hillam considered Ms. Meza's mental health in rendering his opinions, despite his lack of background or assessment to support his mental health restrictions. (Tr. 28.) In doing so, the ALJ takes into consideration that Dr. Hillam does not have expertise in the field of mental health and does not treat Ms. Meza's mental health issues—both proper bases to consider in weighing a medical opinion under *Watkins*, 350 F.3d at 1300–01.

The ALJ also notes the inconsistency between Dr. Hillam's opinion and Ms. Meza's daily activities. (Tr. 28.) Ms. Meza's aquatic therapy, modified Zumba, spinning class, regular church attendance, and care for her ailing mother led the ALJ to reject Dr. Hillam's findings. (Tr. 28 (*citing* tr. 861, 1189, 1209, 1222, 1247).) Courts frequently uphold the ALJ's reliance on activities of daily living as a basis to discount a medical opinion assessing RFC below the level of such activities. *See, e.g., Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (considering ADLs as record support for diminished weight finding).

Because the ALJ provided detailed and legitimate reasons for according little weight to Dr. Hillam's opinion and supported that evaluation with substantial evidence, this Court finds no error.

### B.  Dr. Walton

Ms. Meza also challenges the ALJ's decision to give Dr. Walton's opinion no weight.  (Pl.'s Opening Br. 17–18, ECF No. 17.)  The ALJ, Ms. Meza argues, dismissed Dr. Walton's analysis without proper justification.  (Pl.'s Opening Br. 17, ECF No. 17.)

The ALJ described Dr. Walton's reports, which detail Ms. Meza's pain symptoms and inability to sit or stand for long periods, and acknowledged Dr. Walton qualified as a treating provider.  (Tr. 28 (*citing* 1315–1320).)  Nevertheless, the ALJ found other evidence in the record contradicted Dr. Walton's assessment.  (*See* tr. 28.)  The ALJ cited evidence that Ms. Meza attended a modified Zumba class and participated in spinning exercises as contradicting Dr. Walton's conclusion.  (Tr. 28 (*citing* tr. 1222, 1247).)  The ALJ's explanation constitutes the kind of "specific, legitimate reasons" *Drapeau* requires an ALJ to provide when rejecting a medical opinion.  *See* 255 F.3d at 1213 (quotation marks and citations omitted).  By evaluating the degree to which the broader record supports Dr. Walton's finding and identifying inconsistencies between Dr. Walton's opinion and the other records available, the ALJ satisfied his duty to explain why he found the opinion unpersuasive.  *See Watkins*, 50 F.3d at 1300–01.

### C.  Workability Report

Lastly, Ms. Meza contests the ALJ's decision to grant "no weight" to Ms. Jex's opinion.  (Pl.'s Opening Br. 18, ECF No. 17.)  As the Decision notes, Ms. Jex conducted an RFC evaluation and found, Ms. Meza's "tolerance for work on a full or part time basis

is poor." (Tr. 31 (*citing* tr. 1108).) The ALJ rejected this opinion, however, noting Ms. Meza's "activities of daily living are not consistent with MSPT Jex opinions." (Tr. 31.) The ALJ supported this conclusion by citing medical records indicating Ms. Meza's activities of daily living and the remainder of the medical records do not support the limitations given. (Tr. 31 (*citing* tr. 861, 1189, 1209,1222, 1247).) By this point in the Decision and given the citations, the ALJ clearly stated the reasons for his conclusion, which substantial evidence supports. Therefore, this Court finds no error.

For the reasons stated above, the Court AFFIRMS the ALJ's medical source evaluations.

## V.  Collateral Estoppel

Ms. Meza argues the ALJ violated the principles of collateral estoppel by finding Ms. Meza capable of performing past relevant work as a production assembler and light work generally. (Pl.'s Opening Br. 6-7, ECF No. 17.) The ALJ's February 3, 2010 decision, Ms. Meza contends, binds the ALJ and requires him to find Ms. Meza has no past relevant work and can perform only sedentary work. (*Id.* (*citing* tr. 204, 210).) On November 29, 2011 the Appeals Council remanded that decision. (Tr. 217–220.)

"Res judicata may apply in a social security case when a previous determination is made about the claimant's rights on the same facts and 'on the same issue or issues, and this previous determination has become final by either administrative or judicial action.'" *Gonzales v. Colvin*, 515 F. App'x 716, 720 (10th Cir. 2013) (unpublished) (quoting *Poppa v. Astrue,* 569 F.3d 1167, 1170 (10th Cir. 2009)). Ms. Meza's case meets neither of these requirements. The ALJ's January 23, 2013 Decision rests upon a much broader record of medical reports, including many documents created after the February 3, 2010

decision.  (*See, e.g.*, tr. 1247, 1244, 1209.)   Moreover, the ALJ's remanded decision never became final.  *See Gonzales*, 515 F. App'x at 720.   An ALJ's decision becomes final only if the Appeals Council denies a claimant's request for review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1481.  The ALJ's February 3, 2010 decision never became final because the Appeals Council remanded the case for further consideration.  (Tr. 217–20.)  For these reasons, the ALJ's 2010 decision has no preclusive effect.  Because the ALJ's 2010 decision has no preclusive effect, the Court finds collateral estoppel does not preclude the January 23, 2013 Decision's findings.

## IV.  Vocational Expert Testimony

Finally, Ms. Meza argues the ALJ erred by not resolving the conflict between the Vocational Experts' ("VE") testimonies.   (Pl.'s Opening Br. 19–20, ECF No. 17.) During the December 7, 2009 hearing, a VE asserted Ms. Meza could perform only "[s]edentary work."  (Tr. 73–74.)  In the January 8, 2013 Hearing, a different VE testified Ms. Meza's RFC permits her to perform "[l]ight work" that exists in significant numbers in the national economy.  (Tr. 183–84.)

SSR 00-4p discusses how ALJs should approach conflicts between vocational expert testimony and the *Dictionary of Occupational Titles* ("DOT").  SSR 00-4p states in pertinent part:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  Ms. Meza does not allege that either VE's testimony conflicts with the DOT.  (*See* Pl.'s Opening Br. 19–20, ECF No. 17.)  Instead, she identifies inconsistencies between the two testimonies.  The ALJ has no obligation to resolve such discrepancies.  As noted earlier, the record developed and changed between 2009 and 2013, including reports from the treating physician that Ms. Meza's condition had improved, and she lost considerable weight.  (Tr. 890-91, 1188-90, 1193-95, 1246-1251.)  Because the failure to address inconsistencies between two testimonies does not constitute reversible error, the Court AFFIRMS the ALJ's reliance on the 2013 VE testimony.

## V.  Conclusion

Based on the foregoing, the Court finds that substantial evidence supports the Commissioner's Decision and that the Commissioner applied the correct legal standards.  The Court AFFIRMS the Commissioner's decision in this case.

DATED this 30th Day of September, 2015.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge